# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MELISSA A. BOLDEN, | : | Case No. 3:20-cv-225 |
| | : | |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Melissa A. Bolden brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits, Supplemental Security Income, and for a period of benefits. Her applications were denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

1

Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner requests that the non-disability decision be affirmed.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since July 1, 2014. At that time, she was thirty-four years old. Accordingly, she was considered a "younger person" under Social Security Regulations. See 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c).[2] Plaintiff has a limited education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, PageID 38-51), Plaintiff's Statement of Errors (Doc. No. 9), and the Commissioner's Memorandum in Opposition (Doc. No. 12). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

U.S.C. §§ 423(a)(1), 1382(a). The term "disability"— as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry— reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since her alleged onset date, July 1, 2014.

- Step 2: She has the severe impairments of fingers on the left hand missing since birth; peptic ulcer disease; obesity; depression; [and] anxiety.

- Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity ("RFC"), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work [ ] subject to the

4

following limitations: (1) can never push and/or pull with the left upper extremity; (2) can never climb ladders, ropes/scaffolds, or crawl; (3) can never handle and finger with the left upper extremity; (4) should avoid unprotected heights, dangerous machinery, and commercial driving; (5) can perform simple tasks, but not at a production rate pace; (6) can have occasional interaction with supervisors and co-workers, but no interaction with the general public; (7) can tolerate occasional changes to a routine work setting, defined as one to two per week."

Step 4: She cannot perform any of her past relevant work.

Step 5: She can perform a significant number of jobs that exist in the national economy.

(Doc. No. 6-2, PageID 40-50). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 50-51.

## V. DISCUSSION

Plaintiff presents several errors in the present action. She asserts that error occurred at Step Two in evaluating her severe impairments. She also contends that the ALJ committed error when evaluating the vocational expert's hearing testimony. Additionally, she argues that the residual functional capacity assessment, which reflects she can perform a reduced range of light work, is not supported by substantial evidence.

### A. Step Two Determination

Plaintiff argues that error occurred at Step Two because the ALJ did not find her somatic symptom disorder to be a "severe, yet separate, mental impairment." (Doc. No. 9,

PageID 1308). She contends that he erroneously attributed her related symptoms to other mental impairments, including her anxiety and depression disorders. *Id.* at 1309.

Finding a severe impairment at Step Two is considered a "de minimis hurdle," and "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). However, an ALJ does not generally commit reversible error in finding that an impairment is non-severe at Step Two if the following conditions are satisfied: (1) the ALJ found claimant has at least one severe impairment; and (2) the ALJ considered both the severe and non-severe impairments at the remaining steps in the sequential evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (when a claimant has "at least one severe impairment, the ALJ must consider all impairments, severe and nonsevere, in the remaining steps").

There is insufficient evidence in the record to suggest that Plaintiff's somatic symptom disorder meets the de minimis threshold. In support of her position, Plaintiff cites to the psychological consultative examination of Dr. Larry James. His opinions were afforded "great weight." (Doc. No. 6-2, PageID 47). Dr. James identified that Plaintiff had somatic symptom disorder. (Doc. No. 6-7, PageID 442). He found that it was persistent and severe, and that she had a limited ability to manage her symptoms. *Id.*

Yet, Dr. James' functional assessment does not demonstrate that this impairment has more than a minimal impact on her ability to work. He determined that Plaintiff (1) "is expected to be able to understand and apply very basic instructions in [the] work setting," (2) "most likely has the ability to meet workplace demands," (3) "has the capacity to understand basic instructions from supervisors and co-workers," and (4) "is expected to respond in a satisfactory manner when stressed in the work setting." *Id.* at 443.

Plaintiff further maintains that her "distress and somatic symptoms such as excessive thoughts, feelings and behaviors" have existed for years. Yet, this does not demonstrate that these symptoms meet the de minimis threshold. Likewise, state agency reviewing psychologists, Drs. Janet Souder and Todd Finnerty, designated Plaintiff's somatic symptom disorder as non-severe. (Doc. No. 6-3, PageID 101, 133).

For these reasons, the undersigned declines to find that Plaintiff's somatic symptom disorder should have been classified as a severe impairment. And, even assuming *arguendo*, that Plaintiff's somatic symptom disorder should have been considered a severe impairment, the undersigned finds that no reversible error occurred because the ALJ determined that Plaintiff had several severe impairments at Step Two and considered both her severe and non-severe impairments in the remaining steps of the evaluation.

Plaintiff's somatic symptoms were considered at Step Three. Her somatic symptom disorder was not independently assessed under the Listings, but when assessing the Paragraph B criteria, the ALJ acknowledged that Plaintiff "suffers from excessive thoughts,

feelings, and behaviors related to the somatic symptoms, such as disproportionate and persistent thoughts, persistently high levels of anxiety, and excessive time and energy devoted to health and somatic symptoms." (Doc. No. 6-2, PageID 42).

However, Plaintiff briefly asserts that her somatic symptom disorder is "its own condition and mental impairment" that falls under Listing § 12.07. Yet, she does not set forth evidence that demonstrates that her somatic symptom disorder would meet or medically equal this listing. Indeed, the burden is on the claimant to demonstrate that she meets or equals a listed impairment. *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 536 (6th Cir. 2002). To meet or medically equal § 12.07 (somatic symptom and related disorders), Plaintiff must satisfy criteria under both Paragraphs A and B.

The record clearly demonstrates that Plaintiff does not meet the criteria under Paragraph B. Paragraph B of § 12.07 requires an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4)."

20 C.F.R. Part 404, Subpart P, Appendix 1. These criteria were assessed at Step Three when evaluating Listings § 12.04 and § 12.06. (Doc. No 6-2, PageID 41). Plaintiff was assessed with a mild limitation in the first area and moderate limitations in the other three areas. *Id.* at 41-42. Plaintiff does not challenge these findings. As a result, even if the

ALJ should have considered Plaintiff's somatic symptom disorder under Listing § 12.07, Plaintiff has not demonstrated that she meets or medically equals this listing. Thus, even if error occurred at Step Three as to this impairment, such error would be harmless.

Plaintiff's somatic symptoms were similarly considered at Step Four. In fact, the ALJ noted that Plaintiff alleges she suffers from severe somatic symptom disorder. (Doc. No 6-2, PageID 43). He explained that a "large majority" of her complaints are "somatically based." *Id.* In discussing her tension headaches, he acknowledged that Plaintiff's headaches "were reported in combination with her many (largely somatic) impairments at doctor visits." *Id.* at 44. He also recognized that she presents "with anxiety and somatic based mental symptoms," and more specifically, she "presents to the emergency room on a regular basis with anxiety symptoms and irrational concerns." *Id.* at 47. Relatedly, he observed that Plaintiff's "treatment history plainly shows that she repeatedly presents to medical providers in search of a problem, where none exists," and that she "displays a consistent pattern of somatic [*sic*] and fear of being sick" which results in repeated trips to the emergency room "when it is not warranted." *Id.* at 45, 46. Lastly, as explained above, the ALJ afforded Dr. James' opinions "great weight," which is notable since Dr. James diagnosed Plaintiff with somatic symptom disorder.

Accordingly, the undersigned finds that substantial evidence supports the assessment of Plaintiff's severe impairments at Step Two. And, even if Plaintiff's somatic symptom disorder qualified as a severe impairment, the ALJ did not commit reversible

error because he found that Plaintiff had several severe impairments at Step Two and considered the cumulative effect of her severe and non-severe impairments throughout the remaining steps. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

### B. Residual Functional Capacity and the Vocational Expert's Testimony

Plaintiff contends that error occurred in formulating her residual functional capacity because she believes that the record reflects she is incapable of performing light exertional work due to her severe impairment of her left-hand, which was undeveloped at birth. She further argues that the ALJ failed to properly consider the vocational expert's testimony.

There are two limitations in Plaintiff's residual functional capacity that primarily accommodate her severe left-hand impairment. These limitations include never pushing and/or pulling, and never handling and fingering, with her upper left extremity. (Doc. No. 6-2, PageID 42). Yet, she maintains that, even with these limitations, she is not capable of performing light work because she cannot perform the lifting and carrying that such work requires—which is "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). She argues that her ability to use her left hand for support does not enable her to meet such demands.

These assertions are unpersuasive. The residual functional capacity assessment as related to her left-hand impairment finds support in the medical evidence of record. State agency reviewing physicians, Drs. Rannie Amiri and Teresita Cruz, both opined that Plaintiff would be able to lift and carry up to 20 pounds occasionally, and up to 10 pounds

frequently, even when restricted to never pushing and pulling, nor handling or fingering, with the upper left extremity. (Doc. No. 6-3, PageID 103-04, 136-37).

Plaintiff's testimony at the hearing also supports her residual functional capacity to the extent that it accommodates her left-hand impairment. She testified that while she cannot not lift more than 5 pounds with her left arm, she is otherwise capable of lifting her son, who weighs about 29 pounds. (Doc. No. 6-2, PageID 83-84). She uses her left arm to assist when lifting him, although she testified that it does hurt her arm. *Id.* at 84. Plaintiff acknowledges this in her Statement of Errors in stating that "[t]he heaviest she can lift with her right arm is approximately twenty to thirty pounds…" (Doc. No. 9, PageID 1306).

Dr. Amita Oza's physical consultative examination reflects that Plaintiff "can do most things with her right hand," and that she can perform work related activities if the work involves "something that she can do just with her right hand." (Doc. No. 6-7, PageID 432). Dr. Oza also offered that "she can use just her thumb to hold something very light as a support with her right hand" even though she cannot grip or grasp. *Id.*

The vocational expert testified that Plaintiff would be capable of performing light exertional work in response to a hypothetical question that mirrors the residual functional capacity assessment. (Doc. No. 6-2, PageID 88); *see Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question but only if the question accurately portrays [the claimant's] individual physical and mental impairments")

(citations omitted) (internal quotations omitted).  Upon questioning by Plaintiff's counsel, the vocational expert indicated that the jobs that she found Plaintiff capable of performing could be performed with the right hand only, for a right-hand dominant person. *Id.* at 89. Plaintiff testified she is right-hand dominant. *Id.* at 73.  The vocational expert based this conclusion on her experience, rather than the Dictionary of Occupational Titles, because the Dictionary of Occupational Titles does not address bilateral hand use. *Id.* at 89.

However, Plaintiff asserts that the vocational expert's testimony in this regard is flawed and "goes against the Dictionary of Occupational Titles." (Doc. No. 9, PageID 1311).  Yet, she does not identify how the testimony conflicts or is inconsistent with the Dictionary of Occupational Titles.  Likewise, while Plaintiff's counsel cross-examined the vocational expert, Plaintiff's counsel did not raise any conflicts relating to her testimony at the hearing.  This means that, even if a conflict or inconsistency exists, Plaintiff's counsel has waived the right to make any related challenge before this Court. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) (The "obligation [to investigate the accuracy of the VE's testimony] falls to plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT").

Nevertheless, even if such a challenge were not waived, the undersigned does not identify any obvious conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. In accordance with the Dictionary of Occupational Titles, the jobs set forth by the vocational expert do not require bilateral arm use.  *See* Cleaner

12

Housekeeping, DICOT 323.687-014, 1991 WL 672783; Checker, DICOT 222.687-010, 1991 WL 672130; Can Filling and Closing Machine Tender, DICOT 529.685-282, 1991 WL 674715. In fact, as the vocational expert indicated, it appears to be silent on this issue.

Relatedly, the Commissioner points this Court to *Lacey v. Comm'r of Soc. Sec.*, No. 16-cv-14363, 2018 WL 2181097, at *5 (E.D. Mich. Feb. 15, 2018), report and recommendation adopted, 2018 WL 1180891 (E.D. Mich. Mar. 7, 2018), which discusses whether light exertional work requires that both upper extremities be fully functioning. The court in *Lacey* determined that it does not, and explained that because the regulation for light work only provides for the amount that one must lift:

> …the absence or non-functionality of a second arm is not dispositive of a finding for a limited range of light work. This is because the central question is whether the claimant can lift 20 pounds, not what combination of arm usage—one arm only or both arms together—the claimant must muster in order to lift the stated amount.

*Id.* at *5. This rationale is instructive in this case because, as the medical evidence of record and Plaintiff's hearing testimony reflect, Plaintiff is capable of lifting 20 pounds, her severe left-hand impairment notwithstanding. Therefore, substantial evidence supports the residual functional capacity assessment limiting her to light work.

In addition, Plaintiff asserts that she "feels forced to hide [her left hand] from the general public as a result of being anxious and embarrassed," and this impacts her ability to work. (Doc. No. 9, PageID 1311). Yet, this assertion does not change the outcome in this case because her statements were accounted for in assessing her residual functional

capacity. In fact, the ALJ specifically recognized that Plaintiff "reportedly is very anxious about her left hand and tries to hide it." (Doc. No. 6-2, PageID 43). He also formulated her residual functional capacity to prohibit interaction with the general public and further limit her to only occasional interaction with supervisors and co-workers. *Id.* at 42.

Plaintiff's last asserted error centers on other aspects of the vocational expert's testimony. Building on the aforementioned hypothetical, the ALJ asked several additional questions. As to these questions, the vocational expert testified that if an individual required one or two additional, random fifteen-minute breaks taken outside the work area, then she could not identify competitive work at any exertional level. (Doc. No. 6-2, PageID 88-89). Likewise, she testified that she could not identify competitive work at any level if an individual were off-task 15 percent of the day or absent three days per month. *Id.* at 89.

The undersigned finds that no error occurred in excluding such limitations from Plaintiff's residual functional capacity because the ALJ was not required to adopt limitations that were not supported by the record. *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations"). Plaintiff cites to the fact that "she has been battling progressive symptoms of anxiety for having to hide her left hand from the general public," in support of her argument that the additional limitations would be justified. (Doc. No. 9, PageID 1314). But as noted above, Plaintiff's residual functional

capacity prohibits any interaction with the general public. (Doc. No. 6-2, PageID 42).

This anxiety also caused Plaintiff to "continuously call off of work and demand additional breaks" in her prior work as a cashier. She later quit this job "because of her anxiety and discomfort of knowing that people were looking at her left hand." (Doc. No. 9, PageID 1314). However, the evidence that she points to in support of these assertions consists primarily of her subjective reports, rather than objective evidence or medical opinions that support such limitations. Indeed, Plaintiff does not cite to any medical opinion evidence that suggests she would require random fifteen minutes breaks taken outside the work area, or that she would be off-task 15 percent of the time or absent 3 days per month. For these reasons, the undersigned declines to find error in this regard.

Accordingly, Plaintiff's Statement of Errors is without merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and
2. The case be terminated on the docket of this Court.

July 13, 2021                                                     *s/Sharon L. Ovington*
                                                                                Sharon L. Ovington
                                                                                United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).